**The document below is hereby signed.**

**Dated: November 2, 2011.**



```
                                    _____
                                    S. Martin Teel, Jr.
                                    U.S. Bankruptcy Judge
```

```
              UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
NETtel CORPORATION, INC.,       )   Case No. 00-01771
NETtel COMMUNICATIONS, INC.,    )   (Chapter 7)
                                )
            Debtors.            )   (Jointly Administered)
_____)
                                )
WENDELL WEBSTER, Trustee,       )
                                )
            Plaintiff,          )
                                )
       v.                       )   Adversary Proceeding No.
                                )   02-10118
SCOTT & REID GENERAL            )
CONTRACTORS, INC.,              )   Not for publication in
                                )   West's Bankruptcy Reporter.
            Defendant.          )
```

MEMORANDUM DECISION ADDRESSING
QUESTION OF PRE-JUDGMENT INTEREST

The trustee seeks prejudgment interest utilizing the prime rate as in *Webster v. Harris Corp. (In re NETtel Communications, Inc.)*, 327 B.R. 8 (Bankr. D.D.C. 2005). Scott & Reid does not contest his mathematical calculation using that approach, but contends that an award of prejudgment interest is inappropriate and, in any event, that the 28 U.S.C. § 1961 judgment interest

rate ought to be utilized if prejudgment interest is awarded.

I

In contending that the court ought not award prejudgment interest, Scott & Reid argues:

> As this Court noted in *Webster v. Harris*, one of the reasons for awarding pre-judgment interest in a preference proceeding is to "prevent the unjust enrichment of the preferred creditor" by holding on to the preferential payment. 327 B.R. at 12, citing *In re Smith*, 236 B.R. 91, 103 (Bankr. M.D. Ga. 1999). However, in this case Scott & Reid is not holding onto the Payment. As set forth in Scott & Reid's original Motion for Summary Judgment, a majority of the Payment was immediately distributed to subcontractors and suppliers after it was received by Scott & Reid. [Footnote and citation omitted.]

That argument is unpersuasive. Scott & Reid, as the general contractor, could have insisted on some collateral before undertaking the job if it feared that it might be left empty handed after paying its subcontractors and suppliers. When Scott & Reid perfected no lien in collateral, it became merely an unsecured creditor, and it took the risk that any payment to it might be a preference if the debtor filed a bankruptcy case. Although Scott & Reid may have utilized the payment to pay its subcontractors, that nevertheless was a benefit to Scott & Reid as it relieved Scott & Reid of its obligations to its subcontractors. In any event, a relative lack of unjust enrichment would be only one factor to consider in determining whether to award prejudgment interest, and a court ought to consider the need fully to compensate the estate as well as other

2

equitable considerations.  *In re 1031 Tax Group, LLC*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010); *Webster v. Harris Corp.*, 327 B.R. at 12.

Scott & Reid further contends that this court has discretion not to award prejudgment interest, citing *Katz v. Ida K. Stark Trust (In Van Dyck/Columbia Printing )*, 289 B.R. 304 (D. Conn. 2003).  In *Katz*, the court stated:

> "An award of prejudgment interest is ... within the [bankruptcy] court's broad discretion."  *In re Q–C Circuits Corp.*, 231 B.R. 506, 513–14 (Bankr. E.D.N.Y. 1999). "The purpose of awarding prejudgment interest is to compensate the debtor's estate for the inability to use the property during the time it was in the hands of the transferee." *In re Art Shirt, Inc.*, 93 B.R. 333, 342 (E.D. Pa. 1988). "[C]ase law suggests that the award of such interest [in preferential transfer cases] although frequent, is not automatic."  *Id.* "The factors influencing the exercise of this discretion include: (1) the need for full compensation of an injured party; (2) considerations of fairness and the relative equities of the award; (3) the remedial purpose of the statute involved, and/or (4) such other general principles as are deemed relevant by the court." *In re Q–C Circuits Corp.*, 231 B.R. 506, 513–14 (Bankr. E.D.N.Y. 1999) ( citing *Wickham Contracting v. Local Union No. 3, IBEW*, 955 F.2d 831, 833 (2d Cir. 1992)).

*Katz*, 289 B.R. 304 at 318-19.  Here, the preference statute is designed to assure equality of distribution amongst creditors, and the time value of money requires that, in order to fully compensate the estate for the preferential transfer, the judgment must include prejudgment interest from the date of service of the complaint on Scott & Reid.  During the pendency of this proceeding, Scott & Reid has been able to withhold paying the

3

preference amount to the estate, thereby effectively enjoying a loan from the estate.  It is only fair that it be charged interest on that loan.

II

In arguing that the court ought to utilize the interest rate set forth in 28 U.S.C. § 1961, Scott & Reid argues:

> Not only would that lower rate be more appropriate given that Scott & Reid did not hold on to the Payment and thus recognize any benefit, but given the change in the economic climate since 2005 - especially in regards to financial institutions which set the prime rate - the prime rate has little relevance as a measurement of what interest could be earned by a party holding onto funds, much less a serious benchmark as the cost of funds for most borrowers.  While unfortunate, the use of a Treasury based index as called for in 28 U.S.C. §1961 is more appropriate given the facts of this case and the relative position of the parties to this litigation. Scott & Reid is a relatively small general contractor who has fought through the economic challenges of the past decade, and should not be considered as benefitting in any material way from the Payment.

The estate, in effect, has been Scott & Reid's involuntary lender. Had Scott & Reid paid the trustee at the commencement of this adversary proceeding, it presumably could not have borrowed funds from a lender at a rate of interest any lower than the prime rate.  The administrative claimants and unsecured creditors in the bankruptcy case have been forced to fund their operations without the dividend they will enjoy once Scott & Reid disgorges the unpaid preference.  To the extent they financed those operations by borrowing funds, they would have borrowed at the prime rate (or higher), as that rate changed from time to time.

4

The prime rate is thus a more equitable interest rate to employ than the rate set by 28 U.S.C. § 1961.  *See 1031 Tax*, 439 B.R. at 90.

Accordingly, I conclude that the prime rate, adjusted on each anniversary of the commencement of this adversary proceeding, as was done in *Webster v. Harris Corp.*, is an appropriate approach to utilize.  Because the prime rate is a short term rate, *see Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), it makes sense to adjust that rate on each anniversary of the commencement of the adversary proceeding to reflect the economic reality of what a refinancing would have entailed. Although Scott & Reid has not objected to the compounding of interest annually, that too was necessary to assure that the estate was made whole.  *See, e.g., Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989); *Hylind v. Xerox Corp.*, 749 F.Supp.2d 340 (D. Md. 2010); *Buck Consultants, Inc. v. Glenointe Assocs.*, 2010 WL 2104982 (D.N.J. May 25, 2010); *In re Chase & Sanborn Corp.*, 127 B.R. 903 (Bankr. S.D. Fla. 1999).

                                III

For all of these reasons, I will award interest as proposed by the trustee, utilizing the prime rate of interest as in

5

*Webster v. Harris Corp.*  A judgment follows.[1]

[Signed and dated above.]

Copies to:

All parties and counsel of record; Office of United States Trustee.

---

[1] Neither party has suggested that I should take additional evidence beyond that which is already in the record.  If I am mistaken in thinking that neither party wishes to present evidence on the question of prejudgment interest, a party may file a motion under Fed. R. Civ. P. 59 proffering what evidence would be presented.